*487 It is objected that the cases cited, are cases of precedent fees with subsequent limitations, but that no precedent fee is limited in this instance» To this objection it is answercd, that there is not one case to be found in the books which turned on this distinction; but all the reasons assigned, and which governed the determination, was to carry the party’s intent into execution, as it would not be presumed he would disinherit the children of his son» In the case of Framlingham v. Brandy 1 Wils. 140. the case of Barker v. Surtees is mentioned, but not the least notice is there taken of this objection» These are the last cases in the books on the subject, when, too, all the former authorities had been revised, and the point settled.
The argument that a precedent fee shall not be divested, operates strongly against them» For in the case at bar, a fee vested by descent in the son (who was heir at law) till the contingencies happened, and the testator shall not be supposed to be defeated. An estate in fee is more to be regarded when by descent, than one by devise or any other purchase j wherefore it is that if the testator devises in fee to his heir at law, he shall take nodring by the devise, but his title by descent being most worthy shall be preferred. Porfiar est dispositio legis quam hominis» All the reasons assigned in the cases are, that it shall not be presumed che testator intended to disinherit his son, for by construing all the other cases into estates tail, the effect in favour of the issue would have been the same they now contend for.
It was objected, that this shall not be construed an ex-ecutory devise, but as a contingent remainder. Answer: It has been shewn that take it either way, as the contingencies never happened, the limitation over cannot take effect. But what is the rule suggested to make it a remainder ! It is that wherever there is a particular estate capable of supporting a remainder, it shall not be construed an executory devise. They say, here is a particular estate tail, capable of supporting a remainder. But how is this estate tail created! It is by striking out the words :i if he should die under age" and by the same rule, you *488 make a particular estate of any thing, by striking out the words. Thus, if lands are given to a man and his heirs, strike out the words his heirs, and there is an-estate for life created without difficulty, capable of supporting any remainder, and so it might be in every other instance. But that words ought not to be struck out, see the cases befpre cited. ' The meaning of the rule is, that where a particular .estate is created by the express words of the will, and not where a particular estate is made by striking out what words you please.
That this is an executory devise upon every rule of law? respecting executory devises. There are three\sorts of executory devises ; two of freehold estates, and one of chattels real. The executory devise applicable to the present case, and the only one which need be mentioned, is where a man disposes of his estate in future on a contingency, and in the mean time suffers it to descend to the heir. 2 Bl. Com. 173. Here is a fee-simple given to the Weems to arise on future contingencies, that is, the death of the son underage, and without issue. Till these happen, the fee descends to the heir at law. It is therefore a complete executory devise within the definition of it, cited by Blackstone, and the contingency never happening, there is nothing to take it from the heir. Such a disposition as this would be void as a remainder, there being no particular estate to support it, therefore it can only be good as an executory devise.
Another objection made, was, that the verb should die is repeated, which makes it in the nature of several contingencies. To this it is answered; suppose the verb had not been repeated, it must have been supplied in construction, otherwise the will would be nonsense. If the words had been, if my son should die under age, or xoithout issue, the question naturally would be asked, or xvhat without issue 5 and it would occur to every one, or should die without issue. The will, therefore, says no more than what Judges would be obliged to add, in expounding it. These words would have been supplied in construction, but it be *489 iñg more perfectly expressed, they contend it should operate as an injury to the child» The maxim of law is ex-pressio eorum quae taeite insunt nihil operatur» How will 'this objection avoid the reason the Courts have all along relied on, in construing or, and, to benefit the child and his issue and this was the ruling principle ? In Lord Vaux’s case, it did not depend on the repetition of the verb, but on the particular expressions of the will, and it was to give the estate to the son and heir» In 3 AtL 390. Lord Vaux’s case was cited for the same purpose as they now use it, but the Court disregarded it. By 2 Burr. 920. it is the same thing whether it be directly expressed, or plainly to be collected from the will.
It is also objected that the word or is expressed, and that the sense of the expressions must be adhered to. Answer. This argument would apply to all the cases cited, and is therefore tantamount to saying these cases are not law. The policy of the law does not consist in preserving the strict grammatical meaning of an expression, but in expounding the will, so as to comply with the testator’s intent. If testator gives lands to his brother John, and his brother’s name is William, yet the devise shall operate, and William shall be substituted in the room of John, and the expression give way to the intent. All the cases likewise cited for supplying contingencies, will be subject to the same objection, for the testator did not expressly declare those contingencies, but they were inferred in order to comply with his intention.
Remarks on the cases cited contra»
Lord Vaux’s case, Croc Bliz* 269» There were these words superadded, “ which of the said times, days or hours, come first’’ and by this repetition, and mentioning so particularly which came first, there was reason to suppose them several contingencies. This case is cited in 3 Atk. 390. and is disregarded. Further, the reason assigned for this opinion is denied to be law, viz. because the disjunctive which came last made the precedent contingen *490 c^es °f ^ same nature. The construction there was ill favour of the heir. Here it is to defeat the heir.
In the case of Soulle v. Gerrard, Cro. Eliz. 525. adjudged an estate tail. But that case being before the doctrine of executory devises, the rule of law then was, that no estate, even in a will, could be limited after a fee. But since the doctrine of executory devises has been introduced, no part of a will under these circumstances is to be void, but the devise shall pass a fee with an executory devise over, in case both of the contingencies happened. & Atk. 390. Upon examining the principles of this case, it will be found expressly in point for us. At that time a devise after a fee, by way of executory devise not being known, the Court were obliged to reject the words “ if he die within “ age” But suppose they had thought they could have given the will such a construction as to have given operation to all the words, then per Walmsley and Owen, page 526. they would have construed the word or, as the copulative and, and would not have let the remainder over take place till both contingencies happened. It is then clear that at this time of day, by the introduction of executory devises, all parts of the will is to take effect. How then would the Judges, in the case of Soulle v. Gerrard, have determined the point, had they given effect to all the words; they themselves say they would have given the same construction we contend for. This case then is a case in point for us. The only reason why this case was denied to be law, is because effect was not given to all the words. 3 Atk. 390. 12 Mod. 277. Comyns, 95.
Hilliard v. Fennings, 1 Raym. 505. did not turn on this point, but on the execution of the will. It is a mere dictum of Holt, and by the report of this case in Comyns, 95. it appears he was at first influenced in his opinion by the case of Soulle v. Gerrard, which afterwards, on more mature reflection, he denied to be law. As to Holds reasoning that it might have been the intention of the testator to restrain his son from marrying under age, certainly if that had been his intent, he would have expressed it more fully *491 and explicitly. This conic! not have been the intention, neither would the words have that effect, for suppose the son had married under age, and had afterwards attained Ills age, and died leaving issue, it cannot be supposed the testator intended the remainderman should take against the issue | so that this objection supposes the absurdity, that if he married under age and had issue, and died under age, the limitation over would take effect, but that if he married under age and had issue, and then attained his age, that they should not. How does this hinder his marrying’ indiscreetly? But this dictum of Holt (which from Comyns5 Report, 95. it appears he afterwards retracted) is ox so little weight, that we find Mr. Carthew, in his report of the case, has not even mentioned it, and as he was of counsel in the cause, it is to be presumed he has given the most accurate report, and mentioned all the material points.
The case of the Bishop of Oxton v. Leighton, 2 Veru. 377. has nothing to do with the point, or at least one must have great penetration to see how it applies. The memorandum at the end of the case must have related to some other argument, and short as it is, it is full of inconsistencies. It mentions the point to have been adjudged, in the case of Hilliard v. Jennings, which is evidently a mistake, for in every report extant from that case, it appeal's ic never was adjudged. It is reported in 1 Raynn 505. Comyns, 90. 12 Mod. 276. Cartln 514. From CartheiPs Reports it could not have been determined, as it was an issue out of chancery, to try whether a will was executed agreeably to the statute of frauds, and the operation of die devise was not under consideration; therefore, every thing said on that subject, must have been mere obiter dicta„ It is also imposible thatPoivell could cite Soulle v. Gerrard, in Cro. Eliz. and Price v. Hunt, in Pollexfen, to prove the same point ; for the determinations in those cases are as different as black and white, the one giving an estate tail, and *492 rejecting part of the words, the other giving effect to the whole, and construing the fee to vest on his attaining his age.
The case of Woodward v. Glassbrook, 2 Vern. 388. is overruled by 2 Stra. 1175. 3 Atk. 390. Vernon is not considered a very exact reporter. 2 Vez. 610.
Brownsword v. Edwards, 2 Vez. 243. The rule of construction, is this: where the words are express, and there is no reason appearing from the will to suppose the testator meant differently from what he has expressed, the Court will construe the will according to the expressions j but where the expressions do not co-operate with the intent, and the testator does not give any particular estate to-his child, but plainly indicates .that on the happening of the contingencies, he shall have some estate, but does not say what estate, the Court will suppose he intended to provide for his child in the most ample manner, and to give him a fee on the happening of such contingencies. Therefore, where a testator gives an estate over in case his son die before twenty-one, he shall be supposed to intend him a fee, if he attain his age ; for the particular estate not being mentioned, the Court must go on general principles, and will suppose the testator meant he should have the highest estate. But where the testator has expressly declared he shall have an estate tail on the happening of the contingencies, the Court will not intend a greater estate than the parent has carved out, unless, from the context of the whole will, it appears he intended to give a greater.
To apply this reasoning. In the case cited, the particular estate that the child shall have on the happening of the contingencies, is declared, to wit, an estate tail, and many circumstances appear from the will, to shew the testator intended such an estate, and no other; which makes it still stronger; for where there is a particular estate expressed, and there does not appear from other parts of the will any reason to suppose he meant a different estate than what he has declared, that estate only shallbe given, a fortiori, when it appears from other parts of the will that he *493 Intended that particular estate. The testator has expressed that he only intended to give an estate tail; for, 1st. He gives the fee to trustees for particular purposes, which shews he did not intend the devisee should have it, see p. 248, 2 P. Wins. 195. 2d. He expressly declares if the devisee should live to attain his age of twenty-one years, or have issue, then he was to have an estate tail; this, as Lord Hardwicke observes, was the material point, p. 248. There was, therefore, no reason to resort to construction, as In our case, to find out what estate the testator intended, on the happening of the contingencies, because he has declared it, and nothing appears to shew the testator intended a different estate. In the case cited, the boy attained his age, and took an estate tail, because the testator expressly gave him one. It was construed an estate tail with remainder over, and therefore the remainder shall vest, because as the Lord Chancellor says, p. 249. he made his original devise capable of a proper remainder, in which case, (that is where the particular estate is expressed by the testator,) the Court will always construe it a remainder. By this may be inferred that the rule goes on the express estate given, nothing appearing that the testator intended a different estate than that expressed. In page 249. it is said to be the intent of the testator war-, ranted by the words, which shews they relied on the words, there being nothing to shew the testator intended differently. As for the argument, that the will says, u if a John Brownsword shall die before the age of twenty-a one and without issue, and that both of the contingencies ci must happen before the girl can take it Is expounding the will in part only, laying hold of these words without considering the former. The testator meant and has expressed it, that if either of the contingencies happened, John Brorvnsrvord should have an estate tail, but if neither happened, the' estate was to go over to the girl. There is no reason to construe this an estate in fee to the son, on the happening of either of the contingencies, for the testator has declared the estate he shall have: if he have issue, an *494 estate tail; if he attain his age, only an estate tail; but if neither happen, then the estate to go over. So that he has declared what estate he shall have on the happening of either contingency, and the other words, are only to shew who is to have the estate on the failure of both. It is said, that if the first devise had been to John and his heirs, the construction would have been different. This supports our reasoning. Suppose there had been no words of limitation, the Court would have construed it an estate in fee to-pass, as most beneficial to the child, and giving effect to every expression. The word heirs co-operates with this construction, and the Court have so expounded it. Had they thought the testator meant only an estate tail on the son attaining his age, they might have construed the word heirs to mean heirs of the body, as is done in many other instances where the intent is apparent; but they construe it to pass a fee, thinking the testator intended a fee on the happening of either contingency.
In Southby v. Stonehouse, 2 Vez. 610. the devise is no more than this ; I give to my husband the lands, &c. during his life ; after his death to my child; if the child has no issue, then over; for the words “ if I should leave no “ child,” make no contingency, being nugatory. They mean nothing but what must be implied, for unless she left a child, it could not take. It is nothing more than a plain estate tail to the child, and if he should die without issue, to go over. There is nothing to control the words expressing the party’s intent.
The following opinion is in the hand-writing of the late Daniel Dulany, Esquire, in the case of Chew's Lessee v. Weems. Mr. Dulany was then one of the Council of the Province, and one of the Judges of the Court of Appeals. The first sheet of this opinion is not to he found, •
* * * If the devise be to A. and his heirs, and on his death without heirs, to B. a stranger, the intent and the legal import of the term heirs corresponding, the limitation over is void; but if B. be a relation of A.'s, capable of taking as his general heir, it is otherwise. That the policy of the *495 law guards only against effects, appears also hence, that a person may take as a purchaser from a description of every course of descent. Vid. Burr. Rep. 1106. Ld. Raym. 568. Gomyns, 51. P. Wins. 23. 7 Co. 4. 3 Lew. 70. Gilb. Dev. ■'17.27.
Suppose the testator had been a single man, and had devised in similar expressions to his wife and to a cousin, with a limitation over to W. C. it would have been clear on the above, that there would have been no limitation of a .fee precedent to the limitation to W. C. either absolute or constructive. What is there then in the present case to make it different ? There is no expression on the will itself j there is nothing but the precedent limitation being to a child in útero matris, and the argument must proceed on the presumption, that the testator meant an effectual provision for the child. Admit it, and the consequence will be only, that on this presumption there ought to be an effectual provision for the child ; but not that the construction ought to be carried beyond the principle, or object beyond the regard due to the child.
I have said above, the limitation over is expressly to take effect on the event of the child’s death, if it can be made to depend thereon, and yet the provision for the child be effectually made, as I have shewn above ; there is no ground to contend for any thing more.
It may be said that the will does not expressly make any difference, whether the child died an infant of tender years, or should arrive at age, or have children; the construction, therefore, by which the provision intimated should be made, would not be warranted by the expressions of the will.
The principle on which the construction is to be made, is the presumption arising from the relation of father's and. children, and not the expressions of the will, and no rule can be established for carrying the construction beyond the principle.
If the construction favourable to the child as aforesaid, cannot be supported, because not arising from the exprw *496 sions of the will, neither can any other construction to which there is the same objection, and the consequence then will be, that a strict construction must prevail, and the above presumption have no effect.
If a construction not pointed out by the expressions of the will, is to be rejected, much more ought a construction against the expressions of it, and destructive of the will, to be rejected. If a qualification is not to be admitted, a destruction surely is not. Supposing the presumption to influence, for if it does not, there is no question; the competition then will be betweén a construction which, shall have the same effect as if the devise had been to the child and his heir, and on his death without heirs, to W. C. and his heirs, and a construction which shall have the same effect as if the devise had been to the child and his heirs; and in case of his death in his minority and without issue, then to W. C. and his heirs.
By the expressions of the will, TV. C. is to take on the death of the child and so are the legatees.
What will be the consequence of the former construction should it prevail ? Almost the whole, will would be void. It would be a devise to the son and his heirs. It would be void, because he would have taken the same estate by descent. It would be void as to the whole disposition of the personal estate. The words in case of the death of the child, would be void. The limitation to TV. C. would be void. The intention of making a further provision for the wife, a very natural intention on the event of the child’s dying, would be defeated, as well as the intention respecting all the other persons mentioned in the will. The whole will, consisting of various parts, would be reduced effectually to this; the wife would take a third of the personal, and a third of the real estate for life. This would be the amount, and why this extremitj' of construction? The interest of a collateral relation, who might happen to be heir, who might be a remote relation, for whom no regard is"shewn by the testator, cannot be entitled to so great consideration. The welfare of the child is the object. If then, there may be *497 sui effectual provision for this purpose, with less extremity or violence, it seems to have a good claim to the preference.
By a modification or qualification of the event on which the limitations over of the real and personal were to take effect, the welfare of the child will be fully consulted, and every presumable desire of the testator effectuated, and such qualification will agree better with the expressions of the will. The provision for the wife may be augmented out of the estate the child would not need, and the other objects of the testator’s regard benefited by his intentions. In a word, by supplying, the presumption would be satis» fied, and every part of the will be preserved, and the difference would only be between positive and qualified.
The words K in case of the death of my childf are of the sense with if my child should die. Either form of expression properly denotes contingency. Death is not a contingency j it must happen. A circumstance being added or supplied, may make it a contingency j e. g. before age without issue. Vid. 2 Stra. 1217. 1151. 1 Burr. 225, 227, 228.
The words importing contingency, and the e-vent of death abstracted from other circumstances being none, there is the better countenance thereby given to supply in construction what would make a contingency suitable to tire nature of the case. Lord Mansfield., in the case of Strong v. Cummin, in Burr. 771. collected that a contingency was meant though not expressed, and supplied it in construction. Ibid. 770. and 923. he cites the case of Coriton v. Hellier, where Lord Hardzvicke supplied a contingency. Whatever consideration is to influence the construction, whether expressed or implied, must necessarily be the same. The presumption, if it is to operate, has the same weight as if the testator had expressed himself accordingly ; for it can be no medium between having effect and not having effect. If it has effect, it could only-have it if expressed ; if it has not, it is nothing. The contingency being supplied in construction, every word of the will will stand, though qualified, and the intentions of the *498 testator towards his wife, the other legatees and W. C. have the full effect they ought to have, consistently with the presumption of the testator’s having the first regard for the welfare of his child.
In the bequest to Frances Lane, the direction is, that Kate be delivered immediately after the death of the child. This is most express that at the death of the child, and not any remoter event, the legatee was to take, and, as I have said before, the dispositions over of the personal was not to precede the limitation over of the real estate. The term delivered, in this, and the precedent bequest, corresponds with this construction.
Suppose the child to have arrived at an age proper to have received its part of the personal estate, this estate would have been delivered to the child; by the delivery to the child, the executrix, or any personal representative of the testator, would have nothing more to do, under the will, in respect of any delivery, and could not further comply in the direction to deliver to Frances Chew. In directing the delivery, the testator is to be understood as speaking to the person entrusted with the execution of his will, but after having delivered to the child at the proper age, this person could not afterwards deliver to the other legatee, or to Frances Lane. By this very delivery to the child by the executrix, she would have been oficio functa, consequently it is to be inferred from this direction, that the legacies should fall to the aforesaid legatees, on the event of the child’s death, before its age to receive the estate, since at that age the delivery ought to be made t© the child, and afterwards could not be made by the executrix to the legatees. This arises on the will, minute, indeed, it may appear to be, but circumstances as minute have been insisted upon in construction.
Further, it appears that the testator did not look forward to the very remote event which might not happen in a succession of several generations. This appears from his directions respecting the other legatees, and particularly hi *499 the bequest to Frances Chew, to whom he bequeathed the negro, Kate.
In 2 Burr. 920. very extensive expressions were restrained on a consideration of other expressions in the will. Loi-d Eardwicke observes, that words may be expounded, but not struck out. 3 Atk. 233. Lord Macclesfield, in 2 P. Wms. 194. supplied and construed produce in a sense he would not have allowed, but to support an implicative intention. See P. Wms. 500. Sel. Ca. in Chan. 12, 13. stress laid on the word payable.
In 2 Burr. 767. the testator had three sons, R, I. and W. infants ; some lands he devised to R. and his heirs, and other lands to I. and his heirs : in case R. or I. die, then W. to have the lands devised to I. to W. and his heirs. L died aged, and without issue, intestate. W. claimed — . held he should not take. Here was no contingency mentioned in the will. The meaning was collected from all the parts of the will. Lord Mansfield collected, that the testator certainly did not mean mere estates for life to his two eldest sons ; therefore he must mean a dying on some contingency. The question, what ? it not being expressed. His lordship tabes notice of the children being minors, and other circumstances in the will, and infers the contingency to be a death within age, and without issue, a contingency» not expressed.
In the construction of a will, the connexions of a testator, and the consequential motives he may naturally be supposed to have, are material, and a construction to prevent the falling of a hardship upon a child, seems, therefore, to be just ; but the child being taken care of, why establish an effect in which he is not interested, and which would contradict the plainest intentions in other respects ?
A man makes a will, afterwards marries and has a child; this on the presumption is a revocation ; but if he had no brother or sister before making his will, and had thereby given his estate to a stranger, and a brother or sister had been born afterwards, this would be no revocation.
*500 Plozuclen observes, that in a doubtful case, either in the construction of a statute or a will, a man should suppose himself in the situation of the legislature or testator, and ask the question — had I foreseen the qase, how would I have provided for it ? Had the testator, in the present instance, foreseen that the child would die at the age of six months, can we imagine he could have had any motive to change the objects of his bounty ? In the case above cited from Burr. 767. (as well as many others,) the Court proceeded on this principle — “ the testator could not mean mere “ estates for life. He must mean some contingency. He a could never mean, if I. or R. left issue, nor to preclude “ them from disposing when of age.” He could not mean what would have been unnatural or hard. In the case of Mendez v. Mendez, 3 Atk. 619, 620. (a case too long to abstract,) Lord Hardwicke proceeded upon a similar principle. This case nearly observed, applies very strongly.
Opinion.
William Lock seised in fee of certain lands, devised the same to his son William, his heir at law, without any express limitation of estate, and then follows this clause, viz. “ But my will and intent is, that if my son should die be-a fore he attains the age of twenty-one, or that he should u die without issue of his body, lawfully begotten, then the u said lands to be my cousins’ D. and J. Weems,” &c.
The case states that William, the son, survived his father and attained his age, and died leaving his wife pregnant. That there is now no issue of William, the son, and that the lands are claimed by D. and y. Weems under the limitation aforesaid, and the question is, whether this claim be maintainable ?
I am of opinion that JD. and y. Weems are not entitled, because, as I conceive, it was the intention of the testator, that the limitation over should take eifect only upon the contingency of his son dying within age and without issue, and only part of this contingency has happened, because *501 tiie son attained his age. If the claim on the limitation over could be supported, it would be on this ground, that the above clause being in the disjunctive, it consists of two contingencies, and therefore either happening, the title on the limitation commenced. The question is not, what is the strictly proper import of the term or, but in what sense it was used by the testator, and this is to be inferred by the situation the testator was in, and from what were the objects of his contemplation when he made his will. The effect of a disjunctive construction, would have been, in case the son had died in his minority, and left children, that they would have been disinherited, and yet a provision for his son and issue, was plainly, as it was naturally, the object of his care. This consideration had great weight with Lord Mansjield, in 1 Burr. 2.34. where the devise was to A. and B. in trust to maintain C. and D. during their minority, and when, and as they should attain their age, to them and their heirs equally. Suppose, said his lordship, the object of the tes-' tator’s bounty, had married and died in his minority, having issue, could the testator intend to disinherit ? Certainly not. He held it to be an immediate devise, notwithstanding the words when and as, &c. and with what liberality wdils are to be construed, notably appears by 2 Burr. 770.
The question comes out then, to be, whether it can be reasonably inferred, that the testator intended his cousins should be preferred to his son’s children, had the son died in his minority? If this intention cannot be inferred, there is an end of the matter. It is not material to consider what has been the event of there being no issue, but the state of things, and the situation of the testator when the will was made.
. William was the testator’s heir at law. Without the will the land would have descended to him; so far as the will modifies his estate, it is derogatory from his right as heir at law, and ought not therefore to be doubtful. Had the devise been to him and his heirs, it would have been -void, and he would have taken by descent. Under these circumstances, the reasonable supposition is, that the testa? *502 tor meant, in case his son should not live to be capable of" ( disposing of his estate, and should have no children, I), and J. Weems should take, but not otherwise ; put the case that William, the son, had attained his age and left issue, and it cannot be imagined that _D. and y. Weems could take against the issue ; and -why not ? Because, in the event supposed, it is plain that the issue of the son are preferred to the cousins. Put the case then, that William had died in his minority and left issue j if D. and y., Weems might take against the issue, it must be because on this event, the testator intended to prefer his cousins to his son’s children. But can any reasonable motive be assigned for preferring the issue on the one event, and preferring the cousins on the other? The supposition of such caprice, can be no good ground of construction, and yet if the clause be taken upon the force of the word or, disjunctively, (and it must be so taken to found the claim of D. and y. Weems,) in case the son had died within age, and left issue, D. and yC Weems would have been preferred to the issue, which, I am of opinion the testator never couldintend. Perhaps a casual expression dropped by a Judge may be objected, and it may be said to have'been the father’s design to restrain the marriage of his son before twenty-one,, but this can be of very little weight, not only because the point was not resolved, but because the observation was in itself but very slight; for the provisions of the will intimate nothing like such a design. And if this had been the design, the father most probably would have been so explicit, as that his infant son would have been clearly informed of his design, and not have involved his meaning in so great obscurity. Further, the testator has not made auy degree.of a proper pro- ■ vision for the purpose ; for, put the case that the son had married in his minority, afterwards attained his age, and then died leaving issue, no one can imagine that D. and J. Weems could claim against the issue; so that the objection must suppose, (than which hardly any thing can be more absurd,) that the check meant by the testator, upon the *503 son’s marrying in his minority, was, that if he did so, and happened to die in his'minority leaving children, his issue should be disinherited; but, that if he did so marry, and afterwards happened to attain his age, his issue should inherit; again the objection contradicts, itself. It supposes the testator apprehended his son would be so indiscreet, if he married in his minority, as to marry improperly, and therefore laid the restraint; but yet Chat he thought his son would be so very discreet and provident as not to ■many in his minority, when threatened with the consequence of not having his children provided for, on the event of his dying in his minority,
I cannot distinguish this case from that of Price v. Hunt, in Pollexfen’s Rep. Barker v. Suretrees, in 2 Strange. Besides that Pollexfen is relied upon in 2 Strange, it is also cited and relied upon by Lord Hardwicke, in B. E. L.
It is true, that in the present case, the devise was not to William and his heirs, but as he was the testator’s heir at law, the difference is quite immaterial.
Upon the whole matter, I am of opinion, that inasmuch as William the devisee, son, and heir of the testator, attained his age, the contingency did not happen,- on which the limitation to D. and J. Weems was to take effect, and consequently that D. and f. Weems have no title to the land in question.
Daniel Dulany, 11th November, 1768.
Opinion.
I am of opinion, that William having survived his age of twenty-one, the contingent limitation over in favour of David and fames Weems, could never take effect; the words must be construed, as if the testator had said, in case my son William shall eke before he attains the age of twenty-one, without issue, conjunctively and not disjunctively ; otherwise this absurdity would follow, that if William had died under age leaving issue, the issue would *504 have been disinherited. This reason governed the case of Price v. Hunt, in Pollexfen's Rep. and the case of Barker v. Suretrees, in Strange’s Rep. and I have known it thus ruled in other cases.
C. Toríe, March 28, 1769.
' The Court of Appeals, at February term, 177o, reversed the judgment of the Provincial Court. The plaintiff appealed to the King in Council.